

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JILL JANEZICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **No. 05 C 4923** |
| | ) | |
| JO ANNE B. BARNHART, | ) | **Judge Ruben Castillo** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER (AMENDED)

Jill Janezich brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the

final decision of the Commissioner of the Social Security Administration ("SSA") denying her

application for disability insurance benefits and Social Security Insurance ("SSI") under the

Social Security Act, (the "Act"), 42 U.S.C. § 405(g). Before the Court are the parties' cross-

motions for summary judgment. (R. 23-1, Def.'s Summ. J. Mot.; R. 18-1, Pl.'s Summ. J. Mot.)[1]

For the reasons stated below, this Court finds that the ALJ erred in denying Ms. Janezich's

application for disability insurance benefits and SSI.

### PROCEDURAL HISTORY

Ms. Janezich applied for SSI and disability insurance benefits from the SSA on

November 2, 1999, claiming a disability based upon her breast cancer and subsequent surgeries.

The SSA Commissioner denied Ms. Janezich's claims, and she requested a hearing. On August

---

[1] Citations to (R. __.) refer to the record number that a document is assigned on the docket sheet
for this case. Citations to (A.R. ) refer to the administrative record of these proceedings, which
was filed as entry number 9 on this case's docket sheet.

15, 2001, Ms. Janezich appeared with her counsel and testified at a hearing before an Administrative Law Judge ("ALJ"). The ALJ found that Ms. Janezich did not qualify as disabled within the meaning of the Act because she retained the ability to perform a significant number of jobs despite the limitations caused by her impairments. The ALJ thus denied Ms. Janezich's applications for SSI and disability insurance benefits. After the appeals council denied review, Ms. Janezich filed a civil complaint in the United States District Court for the Northern District of Illinois seeking judicial review of the Commissioner's final decision.

On March 12, 2004, Magistrate Judge Ian Levin entered a memorandum opinion and order ("Order") holding that the Commissioner's decision was supported by substantial evidence for the period of January 1999 through August 1999 and after April 2001, but remanded the case for the ALJ to examine the period from October 21, 1999 through March 20, 2001. Magistrate Judge Levin held that the ALJ's finding that Ms. Janezich was not disabled during that period could not be affirmed because there was insufficient evidence from which the court could "meaningfully and fairly determine whether [Ms Janezich]'s condition was disabling for a continuous period of twelve months." (A.R. 443.) Magistrate Judge Levin was specifically concerned about the vocational expert's testimony that a person who had to convalesce for a period of 32 weeks in an 18 month period would not be able to sustain work activity. (A.R. 442.) To clarify this issue, Magistrate Judge Levin ordered that:

> the hearing should include the calling as a witness of the vocational expert, Mr. Mendrick. Mr. Mendrick should, at a minimum, be asked, specific, appropriate follow-up questions, given the Plaintiff's five surgical dates and the convalescence period for each surgery, relevant to the twelve-month continuous period of disability period issue.

(A.R. 444.) Magistrate Judge Levin directed the ALJ to use this information to determine

whether Ms. Janezich was disabled for a continuous period of twelve months. (*Id.*)

Pursuant to Magistrate Judge Levin's Order, the ALJ held a supplemental hearing on June, 2, 2005, at which Ms. Janezich appeared with her counsel. At the beginning of the hearing, the ALJ stated: "I know that the Court specifically told me to get the Vocational Expert . . . in here to ask specific questions, but I don't know whether the questions need to be asked." (A.R. 497.) Vocational expert Christopher Yap[2] testified that employers in the kind of work Ms. Janezich had performed would not keep jobs open for an employee who had to be absent for repeated surgeries. (A.R. 504.) The following exchange between Ms. Janezich's attorney, the ALJ, and the vocational expert then took place:

| | |
|---|---|
| ATTY: | –one more question. If a person, again, in October, was unable to work for a six to eight weeks due to recovery from surgery, and then the following July was unable to work for six weeks and . . . then in the following July they were unable to work for a three month period of time, would it be your opinion that they would not be able to sustain employment for that 12-month period of time? |
| ALJ: | I don't think you can make him do that analysis for you. |
| ATTY: | I think that's what the–the only reason I asked that, I think that's what the Federal |
| ALJ: | I can't -- |
| ATTY: | that Judge was in – |
| ALJ: | – believe that . . . I don't see how he can answer that kind of a question. Could you sustain work for the 12 months if you can't work for six weeks and then you're – can work for a period of time, and then I don't think that's his analysis. I think that's my analysis. What we do know is that maybe six weeks wouldn't be tolerated absences in those jobs. Three months won't be. Is that – |
| VE: | That's correct. |
| ALJ: | right, Mr. Yap? |
| VE: | Yes. |
| ALJ: | Six weeks might not either? |
| VE: | Yes, that's correct. |
| ALJ: | Okay. All right. Does that help? |

---

[2] Christopher Yap replaced Mr. Mendrick, who had provided the vocational expert assessment at the original hearing.

3

| | |
|---|---|
| ATTY: | Yes. |
| ALJ: | Okay. All right. Is there anything else. |
| ATTY: | No, nothing further. |

(A.R. 505-06.) The hearing then adjourned. (A.R. 506.)

On June 24, 2005, the ALJ issued a ruling ruled that Ms. Janezich was not disabled within the meaning of the Act because her condition did not meet or equal a listed impairment and because she was able to perform other jobs existing in significant numbers in the national economy. (A.R. 418-19.) The ALJ's decision became the final decision of the Commissioner subject to federal court review. *See* 20 C.F.R. § 404.984(a); 20 C.F.R. § 416.1484(a)(d).

## RELEVANT FACTS[3]

Ms. Janezich, who was born on December 17, 1960, is a high school graduate who worked steadily for most of her adult life as an apartment manager, home care worker, or waitress. (A.R. 135-136, 180.) On September 20, 1999, Ms. Janezich sought medical treatment for a lump in her right breast. She reported to her physician, Dr. Gary Schaffel, that she had discovered the lump approximately six to eight weeks prior to the visit to his office. (A.R. 237.) On September 23, 1999, a biopsy of Ms. Janezich's right breast revealed infiltrating ductal carcinoma. (A.R. 17, 194, 197-198.)

On October 21, 1999, Dr. Sonya M. Sharpless, a surgical oncologist, performed a modified radical mastectomy to remove the cancerous growth from Ms. Janezich's right breast. (A.R. 185.) The surgery successfully removed the growth, and there was no need for subsequent chemotherapy or radiation therapy. (A.R. 207-208.) Dr. Sharpless ordered Ms. Janezich to convalesce at home from October 21, 1999 through December 16, 1999 to promote her recovery.

---

[3] The facts—which are undisputed— are set forth in great detail in Magistrate Judge Levin's March 12, 2004 Order. (A.R. 424-39.)

4

During this convalescence period, Ms. Janezich's surgical wound healed poorly and became infected. Dr. Sharpless subsequently performed a debridement procedure on the wound area and treated the wound with hydrogen peroxide. (A.R. 226.) This procedure did not require an extension of the original surgical convalescence period. (A.R. 411.)

On November 21, 1999, Dr. Sharpless completed a medical questionnaire for the Bureau of Disability Determination Services. (A.R. 201-04.) She reported that a right modified radical mastectomy had been performed on Ms. Janezich, that there was no evidence of recurrence of the cancer since the October 1999 mastectomy, and that the current therapy was controlling the growth. (A.R. 201.) She also reported a "partially open wound, healing poorly . . . ." (A.R. 201.) Dr. Sharpless opined that Ms. Janezich was limited in lifting, carrying, and handling objects with her right extremity that were over fifteen pounds to avoid lymphedema.[4] Additionally, Dr. Sharpless reported that Ms. Janezich had numbness from her right armpit down to her elbow, and that she would have long-term decreased sensation at her right armpit and right arm. (A.R. 202-03.) She also reported that Ms. Janezich was a "well nourished female, vitals stable," with "good power and tone in all limbs." (A.R. 206.) She said that although Ms. Janezich's right shoulder had "immediate postoperative stiffness," she "should regain full range of motion within 1-2 months." (A.R. 202.). Dr. Sharpless reported that Ms. Janezich required "no chemotherapy or radiation therapy." (A.R. 205.)

On November 22, 1999, Dr. Sharpless indicated to Ms. Janezich that there was no discharge from Ms. Janezich's surgical wound. (A.R. 227.) Ms. Janezich told Dr. Sharpless that she had no breast pain, fever or chills. (*Id.*) Dr. Sharpless noted that Ms. Janezich should be

---

[4] Lymphedema is swelling caused by interference with normal drainage of lymph back into the blood.

seen again in two weeks and that she should take an antibiotic for ten days. (*Id.*) Dr. Sharpless did not recommend an extension of the original surgical convalescence period, which ended on December 16, 1999.

From December 17, 1999 through July 30, 2000, a period of approximately seven and a half months, Ms. Janezich had a period of non-convalescence. During this time, however, Ms. Janezich reported feeling worn out, as if her body had gone through a grieving period. (A.R. 46.) While Ms. Janezich received individual and group counseling for a brief period from November 24, 1999 through January 6, 2000, for depression and anxiety related to her breast cancer, neither she nor her doctor has claimed that she had a mental illness that rose to the level of an impairment. (A.R. 372.) Ms. Janezich continued to see Dr. Sharpless during her period of non-convalescence. On February 7, 2000, Ms. Janezich saw Dr. Sharpless and reported that she still had numbness in her right arm. (A.R. 225.) Dr. Sharpless noted that Ms. Janezich's incision was "well-healed" and that she should see someone for right upper limb lymphedema. *Id.* After a March 10, 2000 visit, Dr. Sharpless reported that Ms. Janezich's right breast was well-healed and her infections had resolved. Dr. Sharpless also reiterated that Ms. Janezich did not need to undergo chemotherapy or radiation therapy. (A.R. 208.) On March 21, 2000, Dr. Barry D. Free, a state agency physician, reviewed Ms. Janezich's medical record and completed a Physical Residual Functional Capacity Assessment form. (A.R. 211-18.) Dr. Free concurred in Dr. Sharpless' assessment of Ms. Janezich's condition. (A.R. 211-18.)

The period of non-convalescence ended on July 31, 2000, when Ms. Janezich underwent the first of three breast reconstruction surgeries. (A.R. 411.) Dr. Paul M. Steinwald performed the first reconstructive surgery, and subsequently reported that the surgery was complicated by

partial loss of the lateral one-third of the skin and soft tissue flap. (A.R. 241, 275-79.) Although Ms. Janezich tolerated the surgical procedure well, Dr. Steinwald imposed a six week convalescence period ending on September 11, 2000. (A.R. 279, 411.) On August 19, 2000, Dr. Steinwald debrided the wound site of necrotic skin and non-viable tissue that resulted from the July 31, 2000 surgery. (A.R. 272.) The debridement procedure required a ten week convalescence period that ran concurrently with the convalescence period from the reconstructive surgery. (A.R. 411.). Ms. Janezich was examined by Dr. Steinwald on a daily basis for approximately two weeks following the debridement. (A.R. 299-303.) Ms. Janezich also received visits at home twice daily from a nurse that dressed her surgical wound and monitored it for infection. (A.R. 49, 296.) The nursing visits lasted for approximately two months following the July 31, 2000 surgery. (A.R. 49, 296.)

Ms. Janezich was not able to do many things to care for herself or her daughter after the first reconstructive surgery. (A.R. 152-153.) Ms. Janezich testified that she was "almost always fatigued," and that "any movement that puts strain on my right side is difficult and tiresome." (A.R. 152.) She also reported that she slept from 10:00 p.m. to 7:00 a.m. and took a two hour nap "most days," although she would have preferred to take three hour naps. She had the energy to accomplish small tasks. (A.R. 152.) On a typical day she took care of her fourteen-month-old daughter, made easy meals, did occasional grocery shopping, and loaded the laundry into the machine (but could not carry it). (A.R. 153.) She did not hold or carry her baby, however, because of pain and strain. (*Id.*) She had to wear button down shirts because she could not raise her arm for pull-over shirts. Ms. Janezich did not go out socially during her series of surgeries. (A.R. 435.)

The period of convalescence following the first reconstructive surgery ended on October 28, 2000.[5] A non-convalescence period of ten days followed from October 29, 2000 through November 7, 2000. On November 8, 2000, Dr. Steinwald performed the second breast reconstruction surgery. He then required Ms. Janezich to convalesce for a period of six weeks, from November 8, 2000 through December 20, 2000. (A.R. 411.) Ms. Janezich then had a period of non-convalescence from December 21, 2001 until February 20, 2001. On February 21, 2001, Dr. Steinwald performed the final reconstructive surgery on Ms. Janezich's right breast. (A.R. 263-67.) Dr. Steinwald required her to convalesce for four weeks after this procedure to promote her recovery until March 21, 2001. (A.R. 411.) This was the final period of convalescence for Ms. Janezich.

On April 3, 2001, Dr. Steinwald saw Ms. Janezich, who reported she was feeling good overall, and Dr. Steinwald noted that Ms. Janezich could return to work within one to two months. (A.R. 286.) On April 16, 2001, Dr. Sharpless reported that Ms. Janezich would have certain "lifting restrictions for the rest of her life." (A.R. 280.) Consequently, she was permanently precluded from lifting more than 15 pounds with her right arm, carrying any weight on her right shoulder, or performing abdominal lifting of thirty to fifty pounds. (A.R. 280.) On April 30, 2001, Dr. Steinwald noted that Ms. Janezich had a difficult time healing from the various surgical procedures, with partial tissue loss, and secondary wound infection. (A.R. 370.) Ms. Janezich did not have any complications from the second or third surgeries, and Dr. Steinwald considered her post-operative convalescence to be standard. (*Id.*)

---

[5] In October 2000, Ms. Janezich received additional counseling for renewed conflict with her family and issues pertaining to her breast cancer.

## LEGAL STANDARDS

A district court reviews the ALJ's decision to deny benefits to determine whether it is supported by substantial evidence or is the result of an error of law. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "The court will 'conduct a critical review of the evidence,' considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and 'the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues.'" *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez*, 336 F.3d at 539). In reviewing the ALJ's decision, this Court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez*, 336 F.3d at 539.

## ANALYSIS

A claimant is only qualified for disability benefits where she is found to be disabled within the meaning of the Act. 42 U.S.C. § 423(a)(1)(E); *Briscoe*, 425 F.3d at 351. The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA has interpreted this statute to mean that both the impairment and the inability to engage in "substantial gainful activity" must last for 12 months. 65 Fed. Reg. 42774 (2000); *Barnhart v. Walton*, 535 U.S. 212, 219-20 (2002) (upholding SSA's construction of the term "disability" as requiring an inability to engage in substantial gainful

work for 12 months).

In determining whether a claimant is disabled, an ALJ must employ a now-familiar five-part test, considering whether:

> (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe*, 425 F.3d at 351-52 (citing 20 C.F.R. §§ 404.1520, 416.920). An affirmative answer in steps one, two, or four leads to the next step, while an affirmative answer to either steps three or five requires a finding of disability. *Id.* at 352. A negative response at any step other than step three ends the inquiry and requires a finding that the claimant is not disabled. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citing *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Briscoe*, 425 F.3d at 352.

Here, the ALJ's analysis at steps one, two, and four are not in dispute. The ALJ found that during the period from September 23, 1999 through March 31, 2001, Ms. Janezich did not engage in substantial gainful activity, was suffering from a severe impairment, and was unable to perform any of her past relevant work. (R. 1, Compl., Ex. 1, 6/24/06 ALJ Ruling at 13.) Ms. Janezich argues, however, that the ALJ made erroneous rulings at steps three and five, by finding that her condition did not equal a listed impairment and that she was capable of performing other jobs existing in significant numbers in the economy. (*Id.*; R. 19, Pl.'s Mem. at 9-13.) Ms. Janezich also argues that this Court should reverse the ALJ's finding because the ALJ violated

the law of the case by straying from Magistrate Judge Levin's remand order. (R. 19, Pl.'s Mem. at 7-9.) This Court considers each of these arguments below.

## I. Step Three: Equivalence to a Listed Impairment

At step three of the disability analysis, the ALJ found that Ms. Janezich's "condition did not meet or equal a listed impairment in Appendix 1, Subpart P, Regulation No. 4." (R. 1, Compl., Ex. 1, 6/24/05 ALJ Ruling at 13.) In making this finding, the ALJ discounted the opinion of Dr. Steinwald, the physician who performed the reconstructive breast surgeries. Ms. Janezich argues that the ALJ erroneously rejected this evidence without relying on any other medical opinion. (R. 19, Pl.'s Mem. at 12.)

Where a claimant's condition does not qualify as a listed impairment that gives rise to a presumption of eligibility for benefits, a claimant may still establish her eligibility under step three by showing that her condition is "accompanied by symptoms that are 'at least equal in severity and duration to the listed findings.'" *Boiles v. Barnhart*, 395 F.3d 421, 424 (7th Cir. 2005) (quoting 20 C.F.R. § 416.926(a)). To demonstrate equivalence, a claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). In making the equivalency determination, "an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. § 404.1527(d)(2) (stating that "[w]e will always give good reasons . . . for the weight we give your treating source's opinion"). Instead, the ALJ must point to evidence in the record that justifies a departure from a treating physician's opinion with respect to equivalency and must solicit additional evidence where the record is unclear.

*Boiles*, 395 F.3d at 426.

Dr. Steinwald completed a medical questionnaire on April 30, 2001, stating that he believed that Ms. Janezich's condition was supported by "medical findings that are at least equal in severity to the findings in sec. 1.13." (A.R. 371.) Listing 1.13 described "soft tissue injuries of an upper or lower extremity requiring a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months of onset." This listing has been absorbed in listing 1.08, which requires, in relevant part: "soft tissue injury (*e.g.*, burns) of an upper or lower extremity . . . under continuing surgical management, as defined in 1.00 M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset." Ms. Janezich states that this change has no significant impact on her claim. (R. 27, Pl.'s Resp. at 6.)

The Seventh Circuit has interpreted former listing 1.13 as requiring "the imposition of a series of surgical procedures to restore major function of the extremity." *Waite v. Bowen*, 819 F.2d 1356, 1359 (7th Cir. 1987). Specifically, this listing "is directed at the loss of the use of one extremity, not in itself disabling under the regulations, where restoration of function will require repeated staged surgical procedures over a lengthy period, thus making an individual who would otherwise be capable of substantial gainful employment unavailable for work because of these repeated surgical procedures." *Id.* The Court held that a claimant who had permanently lost the function of his left arm did not meet the requirements for this listing because no surgery was performed to restore the functionality of his left arm. *Id.* This decision demonstrates that listing 1.13 targets individuals who undergo a series of surgeries for the purpose of restoring major

12

function in an extremity. *Id.*

Here, Dr. Steinwald checked a box on a medical questionnaire stating that in his opinion Ms. Janezich had an impairment with medical findings that are at least equal in severity to those listed in 1.13. (A.R. 371.) Dr. Steinwald clarified this statement, however, by reporting that "although section 1.13 describes an injury to an extremity. [*sic*] Breast reconstruction does not directly apply, although in this case hers did require a 'series of staged procedures' in soft tissue reconstruction." (*Id.*) Dr. Steinwald thus based his opinion that Ms. Janezich's condition equaled listing 1.13 on the fact that she had "a series of staged procedures," without considering—as required by both listings 1.13 and 1.08—whether the purpose of those procedures was to restore major function to an extremity. Moreover, in Dr. Steinwald's clarification of his opinion, he effectively disavowed that her condition qualified as either an injury or an injury to an extremity, which are required elements of both listings 1.13 and 1.08.

In rejecting Dr. Steinwald's opinion, the ALJ specifically relied on the lack of evidence demonstrating that the series of reconstructive surgeries that Ms. Janezich underwent were directed toward the restoration of the major function of an extremity. (R. 1, Compl., Ex. 1, 6/26/05 ALJ Ruling at 5.) The ALJ cited medical evidence that Ms. Janezich's reduced functionality in her right side was the by-product of her series of surgeries, rather than the impetus for those surgeries. (*Id.* at 8.) Accordingly, there is substantial evidence to support the ALJ's finding that the series of surgeries was not undertaken to restore functionality, as listings 1.13 and 1.08 require. (*Id.* at 9 (noting that Ms. Janezich "is not alleging a disability based on any medical condition other than the cancerous lump and the impact of the surgeries related to that condition").)

The ALJ also noted that Ms. Janezich experienced no sufficiently continuous loss of function that equates with the type of loss contemplated by listing 1.08. That listing provides examples of the relevant types of function loss, including the "inability to perform fine and gross movement's effectively on a sustained basis for any reason, or the "inability to walk without the use of a walker, two crutches or two canes." (*Id.*) The ALJ specifically relied on the residual functional capacity assessment which is supported by medical evidence—in finding that "the degree of loss of ability to lift, reach overhead, and push and pull . . . is not an equivalent loss of function" to those described in the listing. (*Id.*; *see also* A.R. 17-18 (detailing the ALJ's explicit reliance on medical evidence in the original ruling to determine the residual functional capacity applied on remand).)

This Court finds that the ALJ reasonably found that Ms. Janezich's impairment did not equal listing 1.13. First, Ms. Janezich had the burden of demonstrating the equivalence of her condition to listing 1.13 at step three of the disability analysis. *See Briscoe*, 425 F.3d at 352. The only evidence she submitted on this issue is Dr. Steinwald's medical questionnaire. Dr. Steinwald's written clarification in the medical questionnaire, however, effectively disavowed that Ms. Janezich's condition involved an injury to an extremity. Thus, she failed to provide evidence that her condition was equal in severity to every criteria in 1.13, as is required for an equivalency claim. *Zebley*, 493 U.S. at 531. Second, contrary to Ms. Janezich's assertions, the ALJ did rely on medical evidence in rejecting Dr. Steinwald's equivalency determination. Specifically, she relied on medical evidence demonstrating that Ms. Janezich's loss of functionality was the result of her series of surgeries, rather than the impetus for them. She also relied on medical evidence to determine that Ms. Janezich's residual functional capacity was

14

distinct from the kind of functional capacity listing 1.13 was designed to address. It is not this Court's role to re-weigh the ALJ's determination of the medical evidence. *Lopez*, 336 F.3d at 539. Thus, this Court finds that the ALJ's determination that Ms. Janezich's condition was not equal to listing 1.13 is supported by substantial evidence.

## II.    Step Five:  Number of Jobs in the National Economy Ms. Janezich Could Perform

A negative response at step three, however, does not end the inquiry into whether Ms. Janezich was disabled. *Clifford*, 227 F.3d at 868. If the claimant is not able to qualify for benefits under step three, the analysis proceeds to steps four and five. *Briscoe*, 425 F.3d at 352. As the parties here do not dispute step four, the Court's inquiry continues to step five, for which the Commissioner bears the burden of proof. *Id.* At step five, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir. 1994).

Based on the residual functional capacity limitations the ALJ found in step four, the ALJ determined that Ms. Janezich could perform a limited range of sedentary to light work. (A.R. 417.) At Ms. Janezich's original hearing, the vocational expert, Mr. Mendrick, testified that he was unable to identify any light job existing in the national economy that someone with Ms. Janezich's limitations and vocational profile could perform. (*Id.*) At the second hearing following Magistrate Judge Levin's remand order, Mr. Yap testified, like Mr. Mendrick, that absenteeism from work for six to eight weeks at a time—as Ms. Janezich's surgeries would have required for the time period at issue—would not be tolerated by an employer. (*Id.*) The testimony elicited from Mr. Yap    while replete with interruptions from the ALJ—thus answered yes to Magistrate Judge Levin's question as to whether Ms. Janezich was disabled for a

15

continuous period of twelve months based on her multiple surgeries and convalescence periods.[6] (A.R. 443-44.)

Despite this testimony, the ALJ opined that because Ms. Janezich was not continuously incapacitated from working for a period of at least twelve months, she was not under a "disability" as defined by the Act. (*Id.* at 417-18.) Specifically, the ALJ found that Ms. Janezich could perform a number of sedentary jobs in the national economy, such as general assembly/bench work, inspection and testing, and feeding and offbearing, as defined in the Dictionary of Occupational Titles. (*Id.*)

The ALJ's analysis, and the ultimate decision that Ms. Jazenich was not disabled, is neither supported by substantial evidence nor the proper application of the law. *Lopez*, 336 F.3d at 539. Both vocational experts testified that no employer would hire Ms. Jazenich for the eighteen-month period at issue here, from October 21, 1999, through March 20, 2001, because of her excessive absences due to her repeat surgeries and convalescence periods. Nevertheless, the ALJ found—based on no additional evidence in the record—that Ms. Janezich was capable of performing a significant number of jobs in the national economy.

Instead of assessing the evidence as to the number of jobs in the national economy that Ms. Janezich could perform during the eighteen-month period at issue here, the ALJ essentially skipped the step five analysis and jumped to the conclusion that Ms. Janezich was not disabled because she was not disabled for a continuous period of twelve consecutive months. (A.R. 417.) However, in determining whether a person meets the Act's definition of disability—which

---

[6] In addition, the ALJ gave Ms. Janezich's attorney the opportunity to ask the vocational expert further questions, so Ms. Janezich's argument that the ALJ violated Magistrate Judge Levin's remand order by cutting off questions to the vocational expert is unavailing.

includes in its definition that a person be disabled for a continuous period of twelve months—the ALJ was required to apply the five-step analysis described above. The ALJ, however, improperly ignored the evidence and misapplied the law as to step five of the analysis.

Had the ALJ properly considered the testimony of the vocational experts, the ALJ would have found that Ms. Janezich could not perform a significant number of jobs in the national economy during the eighteen-month period at issue. Furthermore, had the ALJ properly applied the law, the ALJ would have found that Ms. Janezich met the definition of disability under the Act. The Seventh Circuit recently held that "[w]here it is established that the claimant can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity." *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) (citing *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999) (holding that two months is not a significant period); *Cole ex rel. Cole v. Barnhart*, 288 F.3d 149, 152-53 (5th Cir. 2002) (*per curiam*); *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996)). The Social Security regulations themselves set the date at six months after which a work period cannot be deemed an "unsuccessful work attempt." 20 C.F.R. § 404.1574(c)(5). As such, the intermittent weeks wherein Ms. Janezich theoretically could have worked in between her surgeries and convalescence periods constitute "only a short period of time," and thus she was not capable of substantial gainful activity during the relevant eighteen-month period. Thus, the Court finds that the ALJ erred in considering the facts and applying the law, and this Court reverses and remands the ALJ's decision denying Ms. Janezich's application for benefits and SSI.

# CONCLUSION

Accordingly, this Court denies the Commissioner's motion for summary judgment (R. 23), and grants Ms. Janezich's motion for summary judgment, (R. 18). For the reasons set forth above, this Court reverses the ALJ's decision and remands this case for proceedings consistent with this opinion pursuant to 42 U.S.C. § 405(g). The Court directs the Clerk to enter judgment in favor of Ms. Jazenich and against the Commissioner.

Date: September 27, 2006         ENTERED:

Ruben Castillo
United States District Judge